**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| CAROL HOLLAWAY | § | |
| | § | |
| | § | |
| V. | § | CIVIL ACTION NO. G-03-904 |
| | § | |
| | § | |
| JOHN PAUL PAUL WOODLEY, JR., | § | |
| Secretary of Army(Corps of Engineers) | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Pursuant to the trial schedule originally established in this matter, this cause came on for non-jury trial on January 18, 2005, Honorable Samuel B. Kent presiding.  After a two day trial, during which both Plaintiff and Defendant called numerous live witnesses, and the Court having made careful credibility assessments regarding each, and after considering all of the pleadings on file herein, the substantial Pre-Trial Order and related materials kindly submitted by respective counsel, the arguments of counsel during the course of trial, the substantial and very well crafted post-trial submissions by both sides, and after having considered all relevant law and the precise facts of this case, the Court hereby, pursuant to FED. R. CIV. P. 52, enters its Findings of Fact and Conclusions of Law.

## STATEMENT OF THE CASE

This cause, wherein Plaintiff Carol Hollaway ("Hollaway" or Plaintiff) asserts an age discrimination claim pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. 623, was originally filed on October 23, 2003.  Plaintiff, a long time employee of the United States Corps of Engineers asserts her claim against John Paul Woodley, Jr., Secretary of the

Army (Corps of Engineers) ("Corps" or Defendant).  Upon filing, the matter was routinely set for a Rule 16 Scheduling Conference, which occurred on January 7, 2004.  At that time, the matter was set for trial during the week of January 18, 2005.  Following timely adherence with all docket control deadlines, and the parties' having announced ready at a docket call held before commencement of trial, the case proceeded to trial, as scheduled, on January 18, 2005. Jurisdiction is not only proper in this Court, as the case involves a federal employee asserting federal statutory claims against a federal entity defendant, but jurisdiction is mandatory. 28 U.S.C. § 1331.  Venue is also proper in this Court as both parties are residents of this District and Division.  Neither jurisdiction nor venue has been in any way contested in the matter.

## FINDINGS OF FACT

1.  Plaintiff Carol Hollaway was born on July 18, 1952, and is presently 52 years old.  She graduated from Texas A&M University in 1976, with a B.S. in Sociology and obtained a Master's Degree in Sociology and Urban Planning subsequently.  She began working for the Corps of Engineers in 1977 as a temporary employee.  She came on as a permanent employee with the Corps in 1979, and has worked there ever since.  She began as a Social Scientist, GS-9, and in 1984, moved to her current position as a GS-12.  She received numerous awards and citations for excellence in job performance and even conducts classes and training for other planners.  Specifically, she is a Social Scientist in the Planning Section of the Planning and Environmental Branch, assigned to the U.S. Army Corps of Engineers facility in Galveston, Texas.

2

2.     During the course of trial, the parties stipulated that Plaintiff is over forty (40) years of age, and therefore within a protected age class.  Also stipulated is that during Plaintiff's twenty-eight (28) years of employment with the Corps, Plaintiff has not been reprimanded, has performed her job in an exemplary manner and has received national recognition for her work.

3.     On January 9, 2002, the Southwest Civilian Personnel Operations Center of the Corps issued a Job Opportunity Announcement for a GS-13 Interdisciplinary Position in the Planning Section.  The position was posted as a Technical 13, a non-supervisory position with a salary range of $70,455 to $91,601.

4.     Pursuant to customary Corps policy, a Selection Panel was created to consider applicants to fill this position.  The selection panel included Dr. Lloyd Saunders, Division Chief for the Planning, Environmental and Regulatory Division, Richard Medina, Chief of Planning and Environmental Branch, Diana J. Laird, Chief of the Planning Section, Dalton H. Krueger, a Project Manager in the Project and Programs Management Division, and Peter H. Shaw, an employee in the Southwest Division for the Corps, with office in Dallas, Texas.

5.     This Committee was to operate pursuant to the provisions of a Merit Placement and Promotion Plan adopted by the Corps on March 1, 2000.  This plan provides that: "Positions will be filled with the best qualified candidates available, and all selections will be made solely on the basis of merit, as prescribed by law."  All applications for a position such as this vacancy are directed to the Civilian Personnel Operations Center,

3

where they are screened to meet threshold requisites for consideration and then a list of

qualified applicants is referred to the Selection Committee for further processing.

Plaintiff was one of those screened and deemed to be properly qualified for consideration

by such Committee.

6.      The Plan further provides that in addition to considering the resume of each candidate,

the Selection Committee may elect to interview applicants.  Failure to be available for an

interview is not to be used as a basis to screen out a referred candidate, but obviously

poor performance on an interview can be and almost always is directly considered by the

Selection Committee.

7.      Nineteen (19) qualified candidates were referred to the Selection Committee, pursuant to

the relevant Vacancy Announcement No. 11210SW2G.  Among those included were

Plaintiff and Robert Heinly.  Mr. Heinly was ultimately selected for fulfillment of the

vacant position, and Plaintiff, feeling aggrieved thereby, brought suit in the instant cause.

8.      The referral list was issued on February 19, 2002.  On February 27, 2002, the Chair of the

Selection Committee, Diana Laird, forwarded an email to each member of the Selection

Committee, establishing the evaluation criteria for the position and assigning a weight of

20 points for each of 5 categories.  The 5 categories were:

    Demonstrated expert knowledge on procedures and policies associated with
     navigation, flood control and eco system restoration project;

    Demonstrated experience in providing plan formulation and policy compliance
    guidance;

    Ability to provide authoritative advice on water resources planning studies during

planning, design and construction phases of complex projects;

Demonstrated experience directing matrix project delivery planning teams; and

Demonstrated experience in providing technical reviews of plan development, evaluations and recommendations.

Plaintiff makes much of the fact that in her view, this was a technical position. However, having carefully considered all of the trial testimony, including that of Plaintiff, the Court finds that while this position obviously involved numerous technical aspects, interpersonal skills, communication skills and a spirit of cooperation were vital ingredients for anyone filling this position, as well. This will loom large in the Court's further analysis.

9.  The Selection Committee met for the first time on March 4, 2002. Mr. Shaw's participation in this, and most, activities of the Committee were by telephone or other communications to and from Dallas. At the initial meeting, the committee ranked, by score, each of the candidates' resumes. The top three (3) candidates on that list were a Robert Van Hook, who was older and even more experienced than Plaintiff, Plaintiff, and Robert Heinly. Van Hook and Plaintiff were over forty (40) years of age at this time, and thus within a protected age class. Heinly was under forty (40), and therefore not in such class. At the time of this ranking, Heinly possessed a little over a year of experience in the Planning Section, whereas Hollaway possessed twenty-six (26) years and Van Hook possessed twenty-eight (28) years' experience. Once the rankings were completed, the

Committee elected to interview the top six (6) candidates, obviously including Plaintiff and Heinly.

10.   Plaintiff makes a great deal of the adjustment and juggling of the status of the candidates with regard to the initial scoring of each on the basis of the twenty (20) points per five (5) criteria, versus the numerical ranking on the list of the top six (6) candidates.  Her argument is that, by inference, there was a manipulation of the numbers to stack the process in favor of Heinly, the youngest and least experienced of the three (3) top candidates.  However, after having considered with great care the live testimony of each of the witnesses presented at trial, including all available Selection Committee members, the Court finds nothing sinister nor age discriminatory in the ranking process.  The Committee did its best to fairly and objectively evaluate each of the candidates, with age having nothing to do with that process, and arrive at a workable list of the best qualified candidates to be interviewed and further processed.  This is the winnowing process that takes place, to the Court's knowledge, in the filling of virtually any position anywhere, and the Court finds nothing irregular whatever in the manner in which the Selection Committee went about its business in conformity with standardized procedures of the Corps then in effect.

11.   Plaintiff also makes much of the fact that certain of the documents relating to the Selection Committee's work were not retained, in conformity with federal regulation (5 CFR § 335.103(b)(5)).  Again, however, the Court finds nothing significantly inappropriate in this regard.  Scratch worksheets maintained by various Committee

6

members during the initial phases of the Selection Committee's work were not retained.

However, the spreadsheets showing the ranking of the candidates both with regard to

resume consideration and interview results were maintained, and this meets, the Court

finds, the intention of the relevant regulation for document preservation.

12.    Interviews of each of the candidates proceeded on March 22 and March 25, 2002.  Each

interview was limited to approximately 15-30 minutes, and each was conducted live.

Each of the applicants was asked a set of identical questions, and the Selection

Committee was therefore able to consider the responses of each candidate in the context

of those of the other candidates, on the basis of identical materials.  The Court finds this

to be a reasonable methodology for conducting interviews, and again finds that no aspect

of this interview process was discriminatorily stilted in order to obtain a biased result in

favor of Heinly, the youngest applicant.  Indeed, it is with regard to the interview process

upon which Plaintiff's claim founders, and upon which most of the controversy in this

case arises.

13.    The Committee determined that, prior to the interview process, fifty percent (50%)

weight would be given to resume qualifications, and fifty percent (50%) to the results of

the interview.  Again, Plaintiff makes much of the fact that this calculation allegedly

skews the result in favor of Heinly.  But the Court finds this argument impersuasive.

Heinly appears to be advantaged only in that as a very personable and amiable person, he

may have had a distinct advantage over more technically qualified and experienced

applicants, albeit with significantly less personal communication skills.  Based upon a

7

very careful assessment of the live trial testimony of Van Hook, Plaintiff and Heinly, the Court finds that the ranking of candidates based upon both interview and qualifications is a reasonable analysis typical of that done in virtually any job fulfillment and nothing about this breakdown of evaluation criteria strikes the Court as discriminatory, unfair or unreasonable.  The Court finds that interpersonal skills were an integral part of the job to be filled and the Committee was fair and reasonable in considering those, along with technical attributes.  In that assessment, the Committee was not arbitrary, capricious or discriminatory in its final recommendation of Heinly.

14.   Following the interview process, Van Hook and Heinly were tied for number one, in the Selection Committee's assessment, and Hollaway dropped out of the running.  Ultimately, the Committee selected Heinly and recommended him for the position, which was subsequently awarded to him.  Both Van Hook and Plaintiff were aggrieved by this decision, but only Plaintiff's instant suit followed.

15.   Concurrent with all of the foregoing, the Corps instituted, prior to the selection process, an Emerging Leader Program.  The creation of this program followed an intense study of personnel needs within the Corps several years ago.  This study indicated that as much as fifty-eight percent (58%) of the Corps' personnel would be eligible for retirement within five (5) years.  This would create an enormous "brain drain" on those in leadership and management positions within the Corps that would enormously undermine the ability of the Corps to fulfill its mission obligations for the complex and diverse national constituency served by the Corps.  Superficially, the perceived goal of the Emerging

Leader Program was to "fast track" those with unique or particularized skills of relatively modest age and experience, into more senior supervisory and/or management positions. This would seem to pit the goals and purposes of the Emerging Leader Program against the aspirations of the Age Discrimination and Employment Act of 1967, insofar as it applies to Corps personnel.  However, the Court finds that there are critical aspects of this program that, upon more careful analysis, belie the seeming adversity of goals.

The Court finds that the Emerging Leader Program was open to absolutely anyone, of any age, experience or background, in the Corps, and <u>all</u> employees were encouraged to join.  The fact that it might appeal more to younger or less experienced workers then to those who had been with the Corps a long time and therefore felt that they had already "emerged" is of no moment.  That simply addresses the attitudes of older workers, and not the reality of this situation.  That younger people might take advantage of this program more readily than older people is one of choice and not discrimination. Moreover, the fact that this program might have an inadvertantly adverse effect, despite motivation or intent, or, put technically, disparate impact, is equally of no moment in the Court's respectful view.  In specific areas of employment, there simply has to be a mechanism to allow for the maintaining of readiness and effectiveness in the fact of advancing age.  By way of specific examples, the Court considers professional sports, military service, and services ancillary to military service, such as the United States Army Corps of Engineers.  In each of these, there comes a time when mandatory retirement,

9

atrophy of skills or hardening of attitudes and the ability to remain flexible and expansive, really matters.  A 34-year-old fullback released by a professional football team, in favor of a much stronger, faster and more effective 21 year old in the same position would appear on its face discriminatory.  However, based upon legitimate business exception standards evolved by the United States Supreme Court, as will be discussed in the Court's Conclusions, this is a legitimate requirement of professional sports.  As the skills of professional athletes atrophy with time, increasing injuries and the like, younger and stronger people simply must be allowed to replace them.  The same holds true in military units engaged in active combat operations.  And the Court specifically finds it true here, where a critical functional aspect of an ancillary branch of the military, in this case the Corps of Engineers, which serves a vital role in the infrastructure development and maintenance within the United States, simply must have an ongoing, evolving hierarchy capable of dealing with the most sophisticated tasks constantly imposed upon the Corps. Facing the possibility of literally losing almost six in ten of its workers, which would, by age and experience, involve virtually all of its senior management, within a five year period, is of such a magnitude and seriousness that it must be anticipatorily dealt with in an effective and responsible way.  The Court expressly finds that the Emerging Leader Program permissibly does that, and that over time it will prove to be effective in ameliorating the losses which retirement, death and disability will impose on more senior members of the Corps' staff.

In particular, Plaintiff alleges that because Heinly was a participant in the Emerging Leader Program, was younger than her and got the job she wanted, this constitutes age discrimination.  The Court disagrees.  Plaintiff offered no evidence whatever, beyond her own suspicion, to support this contention and the Court therefore expressly finds that the Emerging Leader Program played no role in Heinly's selection over Plaintiff that in any way supports her allegation of age discrimination.

16.    Plaintiff testified in her own behalf twice during trial.  Once as a direct witness, and the last time as a rebuttal witness.  Plaintiff struck the Court as very bright and remarkably articulate.  However, she equally appeared to have no capacity to "suffer fools lightly" and during significant portions of her testimony, struck the Court as dower, sullen, argumentative, impatient, and more than a little condescending.  The Court suggests none of these characteristics as an *ad hominum* assessment of Plaintiff, but only insofar as they precisely apply to the interview process, wherein Plaintiff manifested these potential liabilities to enormous detriment.  Indeed, while she knew well every member of the Selection Committee, she conceded that she considered the questions submitted by the Committee to be irrelevant and trivial and bluntly said so in the interview.  She refused to answer several of the questions, openly questioned their relevance, and was apparently terse and irritated in response to others.  While everyone is free to have his or her own opinions regarding the propriety of the criteria with which one is evaluated in the workplace, usually, it augers to the benefit of the affected person to keep those thoughts

11

to himself or herself.  In this case, Plaintiff's candor proved not only detrimental, but disastrously so.

As will be herein below discussed, in more detail, the Committee members, to a person, were shocked and frankly offended by Plaintiff's attitude.  Every single member of the Committee agreed that her interview presentation ranged from "ineffective" to "terrible." The Court specifically finds that it was not unreasonable for the Committee to significantly factor Plaintiff's attitude and performance into her overall evaluation. Pursuant to the terms of the Age Discrimination and Employment Act of 1967, and the case law spawned by it, this Court is not empowered to second guess the wisdom of employment decisions.  It is only empowered to determine whether or not those decisions are motivated by invidious discrimination.  In this case, the Court finds none.  The Committee fairly ranked the resume qualifications of the candidates, assessed their interview performances, ranked the candidates following an evaluation of both, and made its decision as to fulfillment of the vacant position.  It did so in a workmanlike manner, and the Court finds that no discrimination in this case involving age or any other factor, played any role in that decision.

17.  Plaintiff conceded, during her own testimony, that even after talking with several members of the Committee following her participation in the selection process, absolutely none of them has suggested to her in any way whatsoever that age or the Emerging Leader Program played a role in their decision.  She went to pains to point out to the

Court that she believes the Emerging Leader Program is an insult to older and more experienced workers, such as herself, because it encourages promotion of younger and less experienced personnel. She flatly stated that she has no interest in working in the Program, because she has already "emerged." The Court finds this subjective perception to be not unsympathetic, given the realities of the Program's apparent encouragement of relatively younger workers, but the Court does not find it discriminatory. And the fact that the Plaintiff does, does not change this assessment. The Plaintiff had an equal opportunity to participate in the Program, had she chosen to have done so, and an equal chance with Heinly to answer questions propounded by the Selection Committee in a pleasant, respectful and responsible way. That she elected to intentionally refuse to do either proved to be an unfortunate ones, but does not bootstrap the Committee's consequent assessment of that refusal into age discrimination.

18.  Committee member Dr. Lloyd Saunders testified that he has been with the Corps 33 years. He supervises 80 people in Project Planning in the Galveston office of the Corps. He emphatically testified that age had absolutely nothing to do with the selection process invoked in this case as regards either the resume evaluation or the interview process. He was 60 years of age when the Committee did its work, and said he would not have hesitated to have objected to age bias or to have officially complained about it, had it been a part of the selection process. Indeed, he picked Van Hook to fill the vacancy, not Heinly, and Van Hook was well over 40 at the time. (Had Van Hook been selected,

Plaintiff would not have a viable age discrimination case as a matter of both fact and law, because he was older and more experienced than she was.)

19.    Peter H. Shaw, a fellow Selection Committee member, had 36 years experience with the Corps at the time of his participation of this process.  The Court found Mr. Shaw to be a formalistic, old-fashioned and very proper individual, who appears a stickler for details and doing things "by the book".  His testimony was extremely detailed, and the Court found it highly believable.  He emphatically testified that age was not a factor in the selection process in any way, and that as an older employee himself, had it been, he would not have hesitated to object and complain immediately.  In fact, he stated that he would have been highly offended by such a procedure, and would not have participated. He testified that during the interview process, Plaintiff was "blunt" and "short" and simply gave a "bad interview."  In this regard, the Court particularly notes that he participated in the interview process by telephone, from his office in Dallas, and therefore made no judgment based on body language, facial expressions or the like.  Rather, he assessed her strictly upon what she said, and found her to be distinctly negative to the process to the extent that he was genuinely surprised and not a little offended.  He testified that Plaintiff appeared to be "personally offended" by each of the questions and indeed the entire interview process.  Her tone of voice was cynical to the point of being sarcastic, and his assessment of her interview reflected that.

20.    Diana J. Laird, Chief of the Planning Section in the Corps' Galveston office, also testified live at trial.  She has had more than 20 years' experience with the Corps.  She was 24

14

when she began, and was 41 (within the protected age class) when she became Planning Chief.  As noted above, she set up the Selection Committee.  She testified that there is no age limit for participation in the Emerging Leader Program, and that it is encouraged for consideration by all Corps members as a good way to be targeted for advancement, regardless of age or experience.  She testified that the final ranking of candidates based upon resume consideration and interview was the process she adopted.  The Court finds it to be a fair and reasonable process.  She testified that this is the standard procedure for filling all GS-13 "Tech" positions.  Plaintiff's counsel questioned this witness in considerable detail, with the idea in mind, as discussed above, that there was a manipulation of the process to arrive at Heinly's selection, with the detrimental impact alleged by Plaintiff.  The Court finds this allegation impersuasive.

Again, the Court cannot assess the wisdom of Heinly's selection.  It can only determine whether or not the selection process employed invidiously discriminatory criteria, such as age.  The Court finds that it did not.  As with the other witnesses, Ms. Laird testified that the selection process did not consider age in any way whatsoever.  As with the rest of the witnesses, Laird testified that Plaintiff's interview was "simply awful".  She was not selected because she completed "zeroed out" on half of the selection criteria, to wit the interview process.  All of the Selection Committee members agreed that her "interview was awful".  Laird testified that she has served on numerous other selection committees, and they have all operated in the same way, in conformity with long-established Corps

15

procedures.  She found nothing irregular about this process whatsoever, and would not have hesitated to have addressed irregularities, had they occurred.  By contrast to Plaintiff's performance, Laird testified that Heinly's interview was absolutely excellent. He was personable, energetic, excited and engaging, and he was picked, in her view, largely because of his outstanding interview presentation.  She noted that he and Van Hook tied for first, but that after discussion, the Committee elected to recommend Heinly. She emphatically reaffirmed that age had nothing to do with that determination, any more than it had to do with the elimination of Plaintiff because of her remarkably poor interview performance.  She testified that the Emerging Leader Program is a way for the Corps to address the attrition of its key personnel due to illness, retirement and death. However, she testified that she does not feel the program endorses, infers or recommends age discrimination in any way, and that it is not set up to do so.  She again testified that the Emerging Leader Program is open to any member of the Corps desiring to participate in it, and that it is not unreasonable to give special attention to the most ambitious and well motivated personnel, who avail themselves of such programs for advancement. Finally, she testified that not only was age not considered in this case, it was never even discussed in her presence.

21.    Dalton Krueger, a fellow Selection Committee member, also testified live at trial.  He presented essentially the same testimony as the other Committee members, although he had more gripes than some about the selection criteria and the rankings process. However, he conceded that none of those concerns addressed age problems, as he felt age

was not a factor.  As regards Plaintiff, he also conceded that she simply "blew the interview".

22.    Robert Van Hook, one of Plaintiff's fellow candidates for the vacancy, and that candidate tied with Heinly for top consideration at its conclusion and the one who did not get the job in Heinly's favor, testified that he has been with the Corps for 32 years.  He is 59 years old, now, and was 57 when this process occurred.  He had been in Planning for over 20 years, and felt that he was imminently qualified for the position (an assessment shared by the Committee, who ranked him number one with Heinly).  He candidly testified that he was shocked and surprised when he found that Heinly had been selected for the job, as he had only been in Planning for about two years at that time.  Indeed, when his deposition was taken in this case, he testified that he felt the Emerging Leader Program encouraged age discrimination.  However, when pressed in this regard at trial, he testified that it just seemed to him that the effect was that younger people would be given more attention in terms of advancement and promotion, not that he had any specific examples to present of overt age discrimination.  While he was profoundly disappointed at not getting the job, he did not feel that it was based on invidious discrimination.  He did not bring suit in this case even though he was virtually identically situated with Plaintiff.

23.    Janelle Stokes was also a candidate for the vacancy, and testified at trial.  She is an archeologist with the Corps.  She is 52 years of age, and was 50 when this process occurred.  She had been in Planning for about 15 years by that time.  She had significant complaints about the Emerging Leader Program, and testified that in her view it

17

effectively jumped over a "whole generation" of long-serving personnel.  She impressed the Court as a bright and articulate witness, and testified that she did not feel the need to join the Emerging Leader Program because she had sufficient age and experience to be in a position to give advice and suggestions to members of that very program.  However, of critical significance, she conceded that while the program gives the appearance of advancing younger workers over a "whole generation", she conceded that no aspect of the program states or implies age discrimination, and since this process, she in fact has been promoted to a GS-13 tech position exactly like that considered by the Selection Committee in the instant case.  She was older then than when she took part in this selection project, and was picked on virtually identical criteria and processes as that employed in this case.  This significantly undercuts, in the Court's view, the vitality of Plaintiff's allegation that the Corps has the intent or motive of promoting younger workers over older workers.  This witness is living proof that that is not the case.

24.    Marie Manrique also testified live at trial.  She is a Human Resources Officer in the Fort Worth Personnel Operations of the Corps.  It is her job to provide advisory guidance to selection committees, to insure that they avoid discriminatory practices, or invidiously discriminatory consideration of any applicant.  She expressed some concern that personal notes maintained by Selection Committee members were here destroyed, but concedes that the key documents were retained.  She did not participate in this particular selection process, but has reviewed the file in regard to it, maintained by the Personnel Office in Fort Worth.  She testified that her review indicated that no discrimination took place, and

18

that the selection criteria and process used here conformed to the procedures and requirements of the Corps.  She said no age discrimination was apparent, or inferred, other than that Heinly was in fact younger than the Plaintiff, at the time of his selection.

25.   The Committee made no inquiries regarding any applicant's age, during this process, did not have birthdates available when they considered each candidate, and did not discuss age in any aspect of the evaluation, interview or final selection process.  Most of the Committee members, being within the protected age class, bristled at the thought that age was a factor, and emphatically testified that objections would have been promptly raised had they perceived that to be the case.  Therefore, on the basis of a careful Plaintiff's own trial testimony and the live testimony of all of the other Committee witnesses, and two of the unsuccessful candidates, as well as the successful candidate, Heinly, the Court finds that age discrimination was not a factor, either overtly, covertly, directly or indirectly, whatsoever, in this selection process.  As a result, the Court finds that Plaintiff has failed to state a cause of action, as a matter of fact, based upon age discrimination.  The Court therefore has no choice but to **DISMISS** each and all of Plaintiff's claims against Defendant, herein, **WITH PREJUDICE**.

However, the Court is not unsympathetic to her perception that because a younger person was selected for the position she sought, that she would naturally conclude that this was for an improper reason.  The Court finds, largely based upon the outstanding performance of her counsel, that her claim certainly met a *prima facie* test and was brought in good

19

faith.  As a consequence, as will be discussed in the Court's Conclusions hereinbelow, the Court respectfully declines to award attorneys' fees to the Corps, although the Corps, as the prevailing party is entitled to recover its taxable costs of court, of and from Plaintiff, which the Court so Orders.

## CONCLUSIONS OF LAW

1.  The Age Discrimination in Employment Act of 1967 ("ADEA") prohibits en employer from taking an adverse employment action against an employee forty years of age or older on the basis of age.  29 U.S.C. § 623.

2.  An employee without direct evidence of discrimination can make out a prima facie case by meeting the four-part test established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973), as modified to fit age rather than race discrimination claims:  1) the employee must be a member of the protected class (forty years or older);, 2) she must have "applied and [been] qualified for a job for which the employer was seeking applicants;" 3) she must have been rejected; and 4) the employer must have filled the position with a person younger than the employee. *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 957 (5th Cir. 1993).

3.  Plaintiff met this burden by showing that she was over forty at the time she applied for the GS-13 position, that she did in fact apply for the position and meet the minimum requirements, that she did not receive the promotion, and that Defendant then filled the position with an applicant, Heinly, who met the same minimum requirements but was under forty years old.

20

4.   After a plaintiff has made out a prima facie case of discrimination, the burden falls on the defendant to offer a non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1817.  Defendant stated that it hired Heinly rather than Plaintiff because he performed better in the interview portion of the hiring process and had better leadership skills.

5.   Once a defendant has offered a non-discriminatory reason for the adverse employment action, the plaintiff must show either that the defendant's reason is pretextual or that age motivated the defendant's decision.  *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 352 (5th Cir. 2005); *Bodenheimer*, 5 F.3d at 957.

6.   Plaintiff argues that her qualifications are so superior to Heinly's that Defendant's reason is clearly pretextual.  A plaintiff's better qualifications must "leap from the record" in order to support a conclusion of pretext.  *Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993). "[B]etter education, work experience, and longer tenure" alone do not establish superior qualifications when the chosen applicant demonstrates other valuable skills.  *Price v. Fed. Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002); *Bodenheimer*, 5 F.3d at 959.  While Plaintiff had significantly more experience in the Planning Department than did Heinly, this fact does not demonstrate pretext given that Heinly had other qualifications valued by Defendant.  Plaintiff's own belief in her superior qualifications is also insufficient to establish pretext.  *Grogan v. Sav. of Am., Inc.*, 118 F. Supp. 2d 741, 754 (S.D. Tex. 1999).

7.     The Court cannot "substitute [its] judgment for the employer in evaluating what types of experience are most valuable for an employee . . . in the absence of proof that the standards were not consistently applied or were so irrational or idiosyncratic as to suggest a cover-up." *E.E.O.C. v. Louisiana Office of Cmty. Servs.*, 47 F.3d 1438, 1445-46 (5th Cir. 1995); *Bodenheimer*, 5 F.3d at 959.  Defendant considered Heinly's leadership, motivational abilities, communication skills and personality to be more important than Plaintiff's extensive technical experience.  While the wisdom of this choice may be open to question, it does not constitute age discrimination.

8.     Plaintiff argues that irregularities in the hiring process support an inference that Defendant manipulated the process to promote a younger employee.  Defendant might have kept better records of the hiring process as required by Corps regulations, and the Court can arguably understand why Plaintiff might infer a discriminatory motive from this conduct.  However, these irregularities do not prove that Defendant had a discriminatory motive.  Plaintiff did not show that the hiring process for this position differed in any material respect from that used on numerous other occasions.  Plaintiff also argues that the interview questions were designed to favor Heinly.  However, he was not the top-ranked interviewee; that spot belonged to another who was also well over forty.  Defendant can legitimately ask a variety of questions in an interview, even if Plaintiff does not believe them relevant to the job.  A plaintiff in a discrimination case must prove that the adverse employment action occurred because of discrimination.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S. Ct. 2742, 2747, 125 L. Ed. 2d 407

(1993); *Bodenheimer*, 5 F.3d at 958; *Dailey v. Johnson & Johnson Consumer Prods., Inc.*, 850 F. Supp. 549, 553 (N.D. Tex. 1994).  While Plaintiff has brought forth some evidence of discrimination, she has not proved by a preponderance of the evidence that she did not receive the promotion because of her age.  Rather, the evidence clearly established that she did not get the job because she gave an appallingly bad interview.

9.    Lastly, Plaintiff argues that Defendant's Emerging Leaders Program and the Corps' Strategic Management Plan show that Defendant had a goal of hiring and promoting younger workers, and that these caused Defendant to promote a younger employee over a better-qualified older employee.  While the Emerging Leaders Program may have appealed to younger workers more than older ones, it had no maximum age or maximum years of experience.  If Defendant chose to promote an employee because of participation in that Program and not because of age, it is irrelevant that participation in the program might correlate with age.  *Hazen Paper Co v. Biggins*, 507 U.S. 604, 611, 113 S. Ct. 1701, 1707, 123 L. Ed. 2d 338 (1993).  Additionally, the selection of an employee in the protected class, Stokes, who had not participated in the Program, for another GS-13 position provides evidence that Defendant did not use the Program to discriminate against older employees.  Plaintiff did not prove by a preponderance of the evidence that the concerns articulated in the Strategic Management Plan caused Defendant to promote a younger employee.  The members of the Selection Committee generally testified that they had no knowledge of the Plan.  Plaintiff implies that this testimony is untrue, but Plaintiff did not bring forth any affirmative evidence demonstrating a connection between either

23

the Strategic Management Plan or the Emerging Leader Program and the actions of the Selection Committee.

10.    Plaintiff has made clear that she views this as a disparate treatment case.  However, to the extent that a promotion tied to the Emerging Leaders Program could be viewed as a facially neutral practice that falls more heavily on older employees, Plaintiff has still not made a viable disparate impact claim.  Employers may use such practices when justified by "business necessity."  *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15, 97 S. Ct. 1843, 1854, 52 L. Ed. 2d 396 (1977).  In this case, the age distribution of Defendant's workforce makes hiring, retaining, and promoting younger employees absolutely necessary to the continued provision of quality services for the public.

11.    Also, under the ADEA, an employer may defend such a practice by showing that the particular employment decision at issue was based on a reasonable non-discriminatory factor.  *Smith v. City of Jackson*, No. 03-1160, 73 U.S.L.W. 4251, 4255 (U.S. March 30, 2005).  As explained above, Defendant has shown that its decision was based on its belief that Heinly was more qualified than Plaintiff.

12.    Finally, even if Plaintiff's evidence had proved that Defendant discriminated based on the basis of age in the promotion process, Plaintiff has not proved any damages.  At the end of the process, Heinly and Van Hook were tied for the top rank, both well ahead of Plaintiff.  The Selection Committee chose Heinly.  However, had it not chosen Heinly, Van Hook, who is older than Plaintiff, would have been chosen.  Therefore, Plaintiff

would not have been promoted regardless of Defendant's alleged attitude toward younger

employees.

**<u>CONCLUSION</u>**

As explained above, the Court concludes that Plaintiff has failed to prove by a

preponderance of the evidence that the reason given by Defendant for promoting Heinly rather

than Plaintiff is a pretext for age discrimination.  Therefore, the Court **ORDERS**, **ADJUDGES**,

and **DECREES** that Plaintiff shall **TAKE NOTHING** of and from Defendant.  Because the

Court finds that Plaintiff brought this case in good faith, the Court respectfully exercises its

sound discretion and declines to award attorney's fees to Defendant.  However, Plaintiff is taxed

with costs in accordance with Fed. R. Civ. P. 54(d).  Defendant has ten (10) days to submit a Bill

of Costs to the Court.  A Final Judgment will be issued contemporaneously with this Order.

To the extent that any Finding of Fact constitutes a Conclusion of Law, it is

hereby adopted as such.  To the extent that any Conclusion of Law constitutes a Finding of Fact,

it is adopted as such.

Pursuant to FED. R. CIV. P. 52, these Findings of Fact and Conclusions of Law are hereby

adopted and issued by the Court, and made a part of the record of these proceedings, this the 6th

day of May, 2005.

Samuel B. Kent
United States District Judge